NicholsoN, C. J.,
delivered the opinion of the Court.
Complainants allege that defendant G. W. Miller is indebted to them in the sum of $1,500. That on the- 2d of May, 1861, Miller gave into the possession of complainants a negro man slave as a pledge of security to secure the payment of the said debt, with power to sell the same for not less than $1,100, and apply the proceeds toward said debt. That Miller, in May, 1861, while the slave was so in complainants’ possession, executed a bill of sale thereof to defendant D. H. Townsend, which was registered on the 4th of May, 1861, which bill of sale was made in violation and fraud of complainants’ rights, and no delivery of said slave was made to said Townsend. That complainants are advised said conveyance, made under the circumstances detailed, was fraudulent and void as to their rights, and was a cloud on their title.
Complainants pray for writs of injunction restrain *699 ing defendant Townsend from attempting in any way to set up titl'e to the slave, either by action of re-plevin or otherwise, or attempting to disturb complainants’ possession, and that defendant Townsend’s bill of sale be annulled and vacated, and for general relief.
To this bill defendant Townsend filed a demurrer, assigning in general and specific terms, as causes of demurrer, that there was no equity in the bill. The Chancellor overruled the demurrer and defendant Townsend answered, denying any notice of complainants’ lien by means of the pledge, relying on his purchase for valuable consideration, and upon his registered title as superior to complainants’ title.
The only evidence was the deposition of E. W. Wood, who proved the contract of pledge as charged in the bill, and that complainants had continued in possession of the slave. This witness’ testimony was objected to as incompetent for interest, because he was a surety of complainant on the injunction bond. The evidence of his incompetency was that the name signed to the bond was E. W. Wood, and this was the name of the witness. The Chancellor held, that this was not sufficient evidence that the witness and the surety on the bond were the same person, and allowed the deposition to be read.
Upon the hearing, the Chancellor held that complainants were entitled to the relief prayed for, and • decreed accordingly.
From this decree defendant Townsend has appealed.
The first question arising is, as to the overruling of the demurrer to the bill.
*700 The contract of pledge, accompanied with delivery of possession of the slave, secured to complainants a lien on the slave, for the security of their debt on Miller. In the case of Arundale v. Morgan, it was decided, that “a verbal pledge of a slave is valid by the law of this State, as it stands at present. As regards an absolute sale, or mortgage, of a slave, a writing proved and registered, is required by the lettter of the act of 1831, c. 99. But this statute has no application to a mere pledge, by which the general property does not pass, but remains in the pledger.” This act of 1831 was carried into the Code, and is now the law. The legal title to the slave, therefore, remained in Miller, but subject to the lien of complainants.
The legitimate deduction from this decision is, that as the lien created by a pledge is not required by our laws to be registered, it is good not only against the pledger, but also against his creditors or subsequent purchasers from him. The remark of Judge McKinney, in Tedford v. Wilson, 3 Head, 312, that as against creditors, a lien can not be created by contract between the parties, upon a personal chattel in existence at the time of the contract, without registration, would seem at first view to be in conflict with his holding in the case of Arundale v. Morgan. But we must understand him in the case of Tedford v. Wilson, as referring to liens on personal property, created without delivery of possession, and therefore not coming within the rule as to pledges. So understood, the two decisions harmonize, and secures to the pledger the legitimate rights which attach to his possession.
*701 But the next question that arises is, conceding that complainants’ equity was superior to the rights acquired by defendant Townsend, have they stated enough in their bill to give a Court of Equity jurisdiction of the case ? They allege that Miller had conveyed his legal title to Townsend. This he had a right to do; but in so doing he could not interfere with complainants’ rights as pledgees. Townsend, therefore, took the title to the slave subject to complainants’ lien and not in antagonism to it. He could not become a purchaser for valuable consideration without notice, for the reason that the possession of the slave was with complainants, and that' was constructive notice.
In this attitude of the parties, complainants come into a Court of Equity and invoke its jurisdiction to prevent Townsend from asserting his title by replevin or otherwise. But they make no allegation that he is claiming possession of the slave under his bill of sale, or that he has commenced any proceeding to enforce his title, or that he is .threatening to do so. They allege that the conveyance by Miller to Townsend was fraudulent, but in what respect they fail to show. They say that the bill of sale is a cloud upon their title, but they do not show that it was any more a cloud than was the legal title in Miller. These allegations furnish no ground for equitable relief.
The demurrer, therefore, was erroneously overruled. This result renders it unnecessary for us to consider the question as to the competency of the testimony of E. *702 W. Wood. Nor would the result be differnt where the he was competent or not.
Let the decree below be reversed and the bill dismissed with costs.